UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                          CASE NO. 06-CR-20172

v.                                     DISTRICT JUDGE THOMAS LUDINGTON
                                        MAGISTRATE JUDGE CHARLES BINDER

BRUCE PERRY,

      Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT BRUCE PERRY'S MOTION TO SUPPRESS**
(Dkt. 64)

**I.    RECOMMENDATION**

Because I conclude that the search warrant at issue is supported by probable cause, is not "stale," contains no deliberate falsehoods, and comes within the "good faith" exception created by the United States Supreme Court, **IT IS RECOMMENDED** that Defendant's Motion to Suppress be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

Pending, pursuant to an Order of Reference (Dkt. 65), is Defendant Bruce Perry's Motion to Suppress. (Dkt. 64.) The Government filed a response opposing the motion (Dkt. 68), and Defendant filed a reply. (Dkt. 75.) A hearing was held on December 15, 2006, during which FBI Special Agent Gustavo Grodsinsky testified. Thereafter, both parties were given time to file supplemental briefs. Those briefs have now been filed (Dkts. 76 & 77) and the motion is ready for Report and Recommendation.

**B.     Background**

On June 6, 2006, a federal grand jury returned a Superceding Indictment against Defendant Perry and six others. (Dkt. 20.)  Defendant Perry was charged with one count of conspiracy to distribute at least 100 grams of cocaine and 100 kilograms of marijuana; maintaining a residence for the distribution of drugs; distribution of cocaine and marijuana; and 2 weapons charges.

Defendant Perry moves to suppress the fruits of a search warrant issued by this judicial officer on March 21, 2006, which authorized a search of Defendant's residence located at 255 Trier in Saginaw, Michigan.  The affidavit in support of the search warrant is a six-page document containing fourteen paragraphs of facts to support probable cause.  The affiant is Agent Grodsinsky, who had been employed with the Federal Bureau of Investigation for seven years at the time he swore to this affidavit.  (Aff. in Supp. of Search Warr. ¶ 1, Dkt. 77 at 4.)[1]

The affidavit explains that Agent Grodsinsky worked with a confidential informant referred to as "DEA-1." (*Id.* ¶3.)  Although DEA-1 had prior felony and misdemeanor convictions, Agent Grodsinsky believed him/her to be reliable.  (*Id.*)  The affidavit recites that in May 2005, DEA-1 conducted a controlled purchase of one pound of marijuana from Kip Perry.[2]  In mid-October 2005, DEA-1 undertook a series of recorded telephone conversations.[3]  (*Id.* ¶6.)  In one of those conversations, DEA-1 offered to sell Kip Perry marijuana.  Kip said he was not interested since

---

[1] The entire text of the affidavit in support of the search warrant is also quoted in the Government's Supplemental Memorandum. (Dkt. 77.)

[2] Among those charged in the Superceding Indictment are Bruce Perry and two brothers Kip and Phil Perry. This paragraph, however, refers only to "Perry" and is arguably ambiguous.  However, reading this paragraph together with the proceeding paragraph indicates that the references are to Kip Perry.

[3] The motion papers recount that a wiretap of Kip Perry's telephone was obtained.

". . . I still got 70 at Bruce's house." The affiant interpreted this to mean that Kip was storing 70 pounds of marijuana at Defendant Bruce Perry's house. (*Id*.)

The affidavit goes on to recite that in the two months prior to presenting the affidavit, surveillance officers frequently saw Bruce Perry's vehicle at Kip Perry's residence. (*Id*. ¶8) Further, within days of the affidavit, DEA-1 saw Bruce and Kip smoking marijuana at Kip's residence (*Id*. ¶11) and, within 3 weeks of the affidavit, DEA-1 saw Bruce Perry present at Kip Perry's residence when a customer came and purchased drugs from Kip. (*Id*. ¶ 9.) The affiant states that from his training he knows that drug sellers do not want others to witness their transactions "unless those individuals are trusted members of the conspiracy." (*Id*.) The affiant then states that these facts "indicate[] that Bruce Perry is a member of the Kip Perry organization." (*Id*.)

Agent Grodsinsky also avers that his investigation has linked Bruce Perry to the Trier Street address (*Id*. ¶12), that surveillance officers have frequently followed Bruce Perry to that address (*Id*.), and that "people who participate in a drug conspiracy by providing a safe place for the drug distributors to store drugs until needed . . . often keep records of the drugs[.]. . ." (*Id*. ¶10.)

The search warrant return indicates that the warrant was executed early the next morning and yielded residence papers for Bruce Perry, photos, 11 weapons, a loaded 7.65mm magazine, boxes of ammunition, and over $36,000.00. (*See* Return and Detail of Seized Property, attached to this Report and Recommendation.)

Defendant Bruce Perry argues in this motion that the search warrant affidavit lacked sufficient information to provide probable cause to conduct the search and that the facts recited in support are stale. During the hearing, counsel for Defendant broadly implied that the sworn statements made by Agent Grodsinsky were in reckless disregard for the truth. The Government

3

asserts that Defendant lacks standing to seek suppression; that the facts in the affidavit were sufficient to support the finding of probable cause to search; that the affidavit contains no reckless disregard for the truth; and that its supporting facts are not stale.

**C.    Motion to Suppress**

**1.    Standard of Review**

The standard for reviewing the issuance of a search warrant was established by the Supreme Court: "[T]he duty of a reviewing court is simply to insure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960)). Accordingly, Sixth Circuit precedent requires that a reviewing court pay "'great deference'" to a magistrate's findings of probable cause, "which 'should not be set aside unless arbitrarily exercised.'" *U.S. v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)).

**2.    Recusal**

Although neither counsel contested my authority to consider this motion on the grounds that I was the judicial officer who issued the search warrant at issue, I nonetheless conclude that some consideration of the issue is warranted. Congress has provided for the disqualification of judicial officers in 28 U.S.C. § 455(a), which states in pertinent part:

> (a)    Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)    He shall also disqualify himself in the following circumstances:
>
> > (1)    Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

4

28 U.S.C. § 455. In *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983), a criminal defendant argued that § 455 precluded the same magistrate who issued a search warrant from hearing the suppression motion based upon that warrant. *Id.* at 1094. The Eleventh Circuit found that the defendant could not raise a § 455(a) argument for the first time on appeal, but that it must be brought in a pre-hearing motion. Regarding § 455(b), the court found that recusal was not necessary so long as the magistrate's decision on the motion to suppress was "based on an impartial consideration of the testimony and the physical evidence presented at the hearing" and did not take into consideration any "extrajudicial source of knowledge." *Id.* at 1094.

Protection is further afforded the defendant by virtue of the objection procedure set forth in 28 U.S.C. § 636(b)(1). Objections may be filed with the district court to any report and recommendation, and the district court then is required to make a *de novo* determination of the matters to which objection is made. *See id. See also United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

In an analogous situation, the Sixth Circuit has held that district judges need not recuse themselves from hearing motions to suppress evidence obtained by wiretap warrants signed by the same judge. *United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985) (citing *United States v. Murray*, 762 F.2d 1013 (6th Cir. 1985); *Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980)). This is consistent with the findings of Professor (and United States District Judge) James Carr, who states in his treatise on electronic surveillance that "[t]he judge who originally issued the surveillance order may also determine challenges made to its issuance and execution, although the judge may recuse himself." 2 HON. JAMES CARR & PATRICIA L. BELLIA, LAW OF ELECTRONIC SURVEILLANCE § 6:29 (footnotes omitted). The only example of recusal is a California district

5

court opinion, while decisions similar to *Lawson* are cited from the Seventh and Eighth Circuits. *See id.*

In light of the weight of authority against requiring recusal, and consistent with the practice of the judges in this district in wiretap cases, I decline to recuse myself.

**3.    Standing**

In its response to this motion and at the hearing, the Government challenged Defendant's standing. In its post-hearing brief, the Government discusses at length the seizure of $33,120.00 said to have been found in a locked gun safe, arguing that Defendant has no standing to challenge the seizure of this evidence.

Although the Constitution itself expresses no remedy for a Fourth Amendment violation, the "exclusionary rule," a judicially-created remedy designed to deter future violations, provides that all fruits of an unlawful search be excluded from admission in criminal proceedings. *See generally Illinois v. Krull*, 480 U.S. 340, 347-349, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). However, in order to invoke the exclusionary rule, a defendant "bears the burden of showing that his own Fourth Amendment rights were violated." *United States v. McRae,* 156 F.3d 708, 711 (6th Cir. 1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 130, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)). This threshold question "is ordinarily characterized as one of whether the party has 'standing' to raise the Fourth Amendment contention." 5 WAYNE R. LAFAVE, SEARCH & SEIZURE § 11.3 (3d ed. 1996). Once the Government raises this issue, a defendant bears the burden of demonstrating a legitimate expectation of privacy, which has been defined as an actual, subjective expectation of privacy that society recognizes as legitimate. *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000).

During the hearing, counsel for Defendant unequivocally represented that Defendant acknowledges ownership of all the weapons and $20,000.00 of the cash seized.[4] In light of defense counsel's representation, therefore, I conclude that Defendant has sufficiently asserted ownership over the seized items to accord him standing to seek their suppression, and will therefore evaluate the remaining arguments raised in the motion.

### 4. Reliability of Confidential Informant

Defendant claims that the affidavit provides insufficient support for DEA-1's reliability. The relevant portion of the affidavit states the following:

> During the course of my duties, I have learned about a confidential informant referred to as DEA-1. DEA-1 was facing criminal charges relating to cocaine and offered information, apparently hoping to mitigate the consequences of those charges. I have personally met DEA-1 and worked with DEA-1 in connection with both an attempted and actual controlled purchase of cocaine by DEA-1 from Kip Perry. Though DEA-1 has a prior felony and misdemeanor conviction, I have found DEA-1 to be a credible informant.

(Dkt. 77 at 4-5.) During the hearing, Agent Grodsinsky conceded that he did not specify in the affidavit DEA-1's prior convictions and whether those convictions included crimes of fraud, deception or falsehood. Nevertheless, corroboration can be provided "by various means, including direct surveillance or circumstantial evidence, or [being] vouchsafed' by the affiant's statements about the informant's past performance." *United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999) (quoting *United States v. Jordan*, 999 F.2d 11, 14 (1st Cir. 1993)). Regarding the past police assistance provided by an informant, the Sixth Circuit has held that

---

[4] A "Detail of Seized Property" was attached to the return of this search warrant. Each item seized was given a separate entry on the detail and assigned a number. There are 26 entries. However, the entry for the $33,100.00 (item 14), along with 2 entries for what appear to be computer equipment (items 25 and 26) and an entry for $3,100.00 (item 1), each have a large black "x" through them. I cannot explain these entries, nor did either counsel during the hearing or in their motion papers.

7

> [t]he fact that prior reliability of the informant was verified through [another] Sergeant . . . rather than the personal knowledge of [the affiant] is of no moment. *See United States v. Jeffers*, 621 F.2d 221, 226-27 (5th Cir. 1980) (it is sufficient if affiant received his information regarding the informant's reliability from another police or enforcement agency).

*United States v. Griffith*, No. 89-1680, 1990 WL 239 at **2 (6th Cir. Jan. 3, 1990).

In this case, I suggest that whether or not DEA-1's prior criminal record is sufficiently set forth, DEA-1 independently corroborated his/her own trustworthiness by his/her own actions. As recounted by Agent Grodsinsky, DEA-1 voluntarily participated in attempted drug transactions, as well as at least one "controlled buy" which were heard by the Agent, either by way of a "wire" or the wiretap. DEA-1 recounted numerous occasions when he/she was in the presence of the Perrys during their conduct of illegal activities. The affidavit corroborates these assertions as surveillance officers on more than one occasion placed Bruce and Kip Perry together. Moreover, the presence of the wiretap allows Agent Grodsinsky, and to some degree the issuing Magistrate Judge, to independently assess and corroborate DEA-1's assertions.

Accordingly, I suggest that the quantity of information supplied by DEA-1, the specificity of that information, as well as DEA-1's own actions, support the inference that DEA-1 is trustworthy, and that DEA-1's reliability was sufficiently established in the affidavit supporting the search warrant.

### E. Probable Cause

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The probable cause standard is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The Supreme Court has found that probable cause to conduct a search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Prior to 1983, a two-pronged test (known as the *Aguilar-Spinelli* test) was employed to determine whether probable cause to search existed. The first "basis of knowledge" prong required that the affidavit reveal how the informant came by his or her knowledge. *See Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). The second "veracity" prong required that the affidavit in support of the search warrant offer the magistrate a sufficient basis to conclude that the affiant's informant was trustworthy or reliable. *Id.* In *Illinois v. Gates*, however, the Court decided that the rigid two-pronged test must be abandoned in favor of a more flexible approach which would allow the magistrate to balance all factors presented in the warrant application. *See Gates,* 462 U.S. at 238.

The more flexible method adopted in *Gates* is a "totality of the circumstances" test using a "'practical, nontechnical'" approach. *Id.* at 230-31 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Using this test, "a deficiency in one [prong] may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233; *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). Instances of "other indicia of reliability" can be found in Sixth Circuit case law. For example, in *United States v. Czyprynski*, 46 F.3d 560 (6th Cir. 1995), the court held that statements that are against the penal interest of the declarant bear "intrinsic evidence of credibility." *Id.* at 564-65. And in *United States v. Sonagere*,

9

30 F.3d 51 (6th Cir. 1994), the court found that statements based on first-hand observations are entitled to "greater weight than might otherwise be the case." *Id.* at 53.

The *Gates* court further explained that

[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 233. Thus, the affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found at the place to be searched, but merely establish a fair probability. *See United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984).

During the hearing, defense counsel, both through questioning and in oral argument, set forth a series of reasons why, in his view, the search warrant affidavit is lacking in probable cause. Under questioning by defense counsel, Agent Grodsinsky conceded that he did not mention that the Perrys engaged in a snow plowing business, stating that from his observations, and that of other officers, they rarely undertook that activity. The agent also conceded that he knew that Bruce and Kip got together on almost daily basis to watch "The Price is Right" on television, but did not mention it in the affidavit. The agent also agreed that he could not verify that drugs were continuously stored at Bruce's residence or that any of the "70" referred to in the October 16, 2005, conversation still existed. In fact, the agent agreed that it was likely none of the "70" would have been in the residence at the time of the search.

The Government asserts that it is improper to examine each distinct part of the affidavit separately and then conclude that each part does not establish probable cause. Rather, the Government states that under the totality of the circumstances approach, the proper method is to

10

"weigh not individual layers but the 'laminated total.'" *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir. 1984) (en banc) (quoting *Smith v. United States*, 358 F.2d 833, 837 (D.C. Cir. 1966)).

Under these standards, I suggest that the search warrant establishes probable cause. I suggest that a reading of the search warrant in its entirety indicates "a fair probability" that Bruce and Kip Perry engage in a continuing drug trafficking enterprise, that they use their residences in furtherance of that effort, and that Bruce uses his residence to store drugs. As to Agent Grodsinsky's omissions relating to Kip and Bruce maintaining a snow plowing business and watching "The Price is Right," it is well established in this circuit that "the probable cause requirement does not require that every contrary hypothesis be excluded." *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir.1988); *U.S. v. Wagers,* 452 F.3d 534, 542 (6th Cir. 2006).

  **5.**  **Staleness**

Defendant asserts that another basis for suppression is that the information in the search warrant affidavit was stale, noting that the conversation relating to the "70 at Bruce's house" took place approximately five months prior to the search.

The Supreme Court has said that the proof supporting a search warrant "must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260 (1932). Whether this test is met turns on the circumstances of the individual case. *Id.* at 210-11. In *United States v. Henson*, 848 F.2d 1374 (6th Cir. 1988), the court instructed that "information which demonstrates a chain of related events covering a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists. . . ." *Id.* at 1382 (citing *United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir.1983)). *See also Andresen v. Maryland*, 427 U.S. 463, 478 n.9, 96 S. Ct. 2737, 49 L. Ed.

11

2d 627 (1976) (finding that three-month delay between transaction and search warrant did not negate probable cause).

In this Circuit, it has been held: (1) that the purpose of the staleness test is not to create an arbitrary time limit; (2) that the existence of probable cause is a function of the inherent nature of the crime; (3) that time is less significant with regard to continuing conduct; and (4) that indicia of criminal activity may remain for some period of time after the defendant's last reported criminal activity. *United States v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995). The court has further instructed that,

> [i]nstead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Andresen v. State*, 24 Md. App. 128, 331 A.2d 78, 106 (1975). As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (holding information not stale even though an informant said that two years ago he had remodeled defendant's premises to allow him to grow marijuana on second floor, with the court emphasizing that the information showed "an ongoing criminal business of a necessarily long-term nature"); *see also United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (stating the general principle that when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant").

*United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). The *Spikes* court found that the trial court properly denied a motion to suppress even though some of the events included in the affidavit occurred four years earlier. Id. at 923. In *United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986), the court found that probable cause for a search warrant existed despite the passage of four months since the last documented drug sale.

12

Evidence of ongoing criminal activity will generally defeat a claim of staleness. *See Canan*, 48 F.3d at 958 (though conduct described in affidavit was four years old, evidence of ongoing nature defeated claim of staleness). Moreover, where the criminal activity occurred in a "secure operational base," the passage of time becomes less significant. *Spikes*, 158 F.3d at 924 (where house had become "primary source of crack cocaine in town and . . . was regularly being manufactured on the premises," vintage of information less important). *See also United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001) ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation.").

Under these standards, I suggest that the information supporting this search warrant was not stale. These cases make clear that the character of the primary crime charged, illegal possession and distribution of drugs, is by its nature a "continuing" crime. The affidavit at issue bears this out. As mentioned, approximately five months prior to the warrant's execution, Kip Perry said "I still got 70 at Bruce's house." (Aff. ¶ 6.) This, I suggest, gives rise to the legitimate inference that drugs are sold from Kip's residence but stored in Bruce's residence. Four months prior to execution, surveillance officers observed activity at Kip's residence consistent with drug trafficking. (Aff. ¶ 7). During the 45 days prior to the warrant's execution, Bruce's vehicle was regularly observed at Kip's residence "almost on a daily basis, including when activities consistent with drug trafficking have occurred." (Aff. ¶ 8). Finally, less than three weeks prior to the warrant's execution, DEA-1 observed a drug transaction take place at Kip's residence. (Aff. ¶ 9). This information, I suggest, gives rise to a legitimate inference that the drug trafficking enterprise is continuing without change. In other words, drugs are continuing to be sold from Kip's residence and stored at Bruce's residence. Moreover, as pointed out in *Yates,* the use by Kip and Bruce of their homes gives rise to an inference of "permanence."

As evidence of staleness, Defendant points to the statement in paragraph 11 of the affidavit that DEA-1 most recently saw Bruce and Kip smoking marijuana together "during the week of March 12, 2005." When confronted with this statement during the hearing, Agent Grodsinsky testified that the year 2005 was a typographical error and that the correct date should have been March 12, 2006. I note first that the agent's testimony is not inconsistent with the structure of the affidavit, which proceeds in a generally chronological order. More importantly, however, Defendant's reliance on *U.S. v. Hython,* 443 F. 3d 480 (6th Cir. 2006), does not compel a contrary result for at least two reasons. First, I suggest the case is clearly distinguishable. There, the court found the recitations of fact regarding drug transactions stale for the reason that not one of the facts supporting the search warrant in that case were linked to any date. *Id.* at 486. To the contrary, in this case, a specific date or a reasonable range of time attends virtually every factual recitation made in Agent Grodsinsky's affidavit. Secondly, and with specific reference to paragraph 11, *Hython* cites both *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005), and *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), for the proposition that application of the exclusionary rule is not warranted where the failure to is nothing more than "a scrivener's error." Id. at 535. "Punishing [the affiant officer] for such a ministerial oversight would have no foreseeable deterrent effect on future police misconduct." *Id*. As a result, I therefore suggest that staleness does not invalidate this search warrant.

### 6.    *Franks* **Hearing**

In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the Supreme Court set forth the threshold requirements for obtaining an evidentiary hearing on the validity of an affidavit in support of a search warrant:

14

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. **There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.** They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. **The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.**

*Id.* at 171 (emphasis added). The Court further explained that if these requirements are met, the probable cause determination then must be re-analyzed excluding the material that was allegedly false. If the warrant affidavit still contains sufficient content to support a finding of probable cause, no hearing is required. "On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue." *Id.* at 172.

In this case, Defendant primarily cites the omissions discussed earlier and acknowledged by Agent Grodsinsky during his testimony and the erroneous date contained in paragraph eleven. These assertions, I suggest, fall well below the threshold for justifying a *Franks* hearing, and, for the reasons discussed at greater length earlier, amount at most to "negligence or innocent mistake." I therefore find no basis for the holding of a *Franks* hearing, and suggest that on this ground, the Court deny Defendant's motion.

### H.   Exclusionary Rule - Good Faith Exception

I further suggest that even if the search warrant was issued without probable cause, the officers executing the search appropriately relied upon the warrant's validity, thereby acting in good faith. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In

15

*Leon*, the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id* at 905. *See also United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996). The *Leon* Court noted four specific situations where the good faith reliance exception would not apply:

> (1) where the supporting affidavit contained knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached fashion, and served merely as a rubber stamp for police; (3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; and (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993) (internal quotations and citations omitted).

I suggest that this case presents none of these situations. The affidavit in support of the search warrant at issue, I suggest, is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Savoca*, 761 F.2d 292, 296 (6th Cir. 1985) (internal quotations and citations omitted). The affidavit here goes well beyond a so-called "bare bones" affidavit. *See United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir. 1996) (An affidavit that "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit."). The affidavit here contains allegations by a reliable confidential informant as to illegal activity personally observed. It does not entirely rest upon these allegations, but rather also evidences independent corroborative efforts undertaken by Agent Grodsinsky, including his use of recorded conversations and wiretap information along with other investigative efforts. Moreover, as mentioned in the context of staleness, the omissions found fatal by the *Hython* court

16

do not exist this affidavit. I therefore suggest that the instant affidavit cannot be considered so lacking in the indicia of probable cause as to clearly indicate to police authorities that this warrant should not be executed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    s/ *Charles E Binder*
CHARLES E. BINDER
Dated: January 31, 2007                             United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker and William Brisbois, and served on District Judge Ludington in the traditional manner.

Date: January 31, 2007                    By    s/Jean L. Broucek
                                                          Case Manager to Magistrate Judge Binder