UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                   Case Number 06-20172-BC
v.                                      Honorable Thomas L. Ludington

BRUCE PERRY,

        Defendant.

_____ /

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING REPORT
AND RECOMMENDATION, AND DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE**

This matter is before the Court on the defendant's objections to a report issued by Magistrate

Judge Charles E.  Binder on January 31, 2007 recommending that the defendant's motion to

suppress evidence seized as a result of a search of his residence on March 21, 2006 at 255 Trier

Street in Saginaw, Michigan be denied.  The defendant argued that probable cause to search his

home was lacking because the information contained in the search affidavit was stale.  He also

asserted that the statements made by the affiant were in reckless disregard for the truth.  Finally, the

defendant insisted that the good faith exception set forth in *United States v. Leon*, would not save

the deficient warrant in this case.

The government contended that the affiant's recitations in the search warrant affidavit were

truthful and were sufficient to support probable cause to search the defendant's residence.  The

government further maintained that the defendant lacked standing to challenge the items law

enforcement officers seized.

The magistrate judge conducted an evidentiary hearing on December 15, 2006 and issued

his report on January 31, 2007.  Although the magistrate judge was the judge that issued the search warrant, he noted the neither party objected to his consideration of the case and a thorough review of the case law did not compel his recusal. He further concluded that "the search warrant at issue is supported by probable cause, is not 'stale,' contains no deliberate falsehoods, and comes within the 'good faith' exception created by the United States Supreme Court." R&R at 1.

Thereafter, the defendant filed timely objections to the report and recommendation.  He emphasizes the fact that the information contained in the search warrant affidavit indicating a quantity of drugs was being stored in the defendant's residence was stale because the warrant was not executed until approximately five months after law enforcement officers obtained that information, and there was no later evidence of any drug trafficking or storage at 255 Trier Street. The defendant also objects to the magistrate judge's suggestion that the affiant's statements were not made with reckless disregard for the truth and the good-faith exception is applicable under the circumstances of this case.

This Court heard oral argument on the defendant's objections on March 21, 2007.  After conducting a *de novo* review of the record including the transcripts of the evidentiary hearing and in light of the parties' submissions, the Court now concludes that magistrate judge reached the correct result.  Therefore, the Court will overrule the defendant's objections, adopt the magistrate judge's report and recommendation, and deny the defendant's motion to suppress.

## I.

The parties do not object to facts as recited by the magistrate judge.  The Court finds that they faithfully track the record as it has been developed and adopts them here:

On June 6, 2006, a federal grand jury returned a Superceding Indictment against

-2-

Defendant Perry and six others. (Dkt. 20.) Defendant Perry was charged with one count of conspiracy to distribute at least 100 grams of cocaine and 100 kilograms of marijuana; maintaining a residence for the distribution of drugs; distribution of cocaine and marijuana; and 2 weapons charges.

Defendant Perry moves to suppress the fruits of a search warrant issued by this judicial officer on March 21, 2006, which authorized a search of Defendant's residence located at 255 Trier in Saginaw, Michigan. The affidavit in support of the search warrant is a six-page document containing fourteen paragraphs of facts to support probable cause. The affiant is Agent Grodsinsky, who had been employed with the Federal Bureau of Investigation for seven years at the time he swore to this affidavit. (Aff. in Supp. of Search Warr. ¶ 1, Dkt. 77 at 4.)

The affidavit explains that Agent Grodsinsky worked with a confidential informant referred to as "DEA-1." (*Id*. ¶3.) Although DEA-1 had prior felony and misdemeanor convictions, Agent Grodsinsky believed him/her to be reliable. (*Id*.) The affidavit recites that in May 2005, DEA-1 conducted a controlled purchase of one pound of marijuana from Kip Perry. In mid-October 2005, DEA-1 undertook a series of recorded telephone conversations. (*Id*. ¶6.) In one of those conversations, DEA-1 offered to sell Kip Perry marijuana. Kip said he was not interested since ". . . I still got 70 at Bruce's house." The affiant interpreted this to mean that Kip was storing 70 pounds of marijuana at Defendant Bruce Perry's house. (*Id*.)

The affidavit goes on to recite that in the two months prior to presenting the affidavit, surveillance officers frequently saw Bruce Perry's vehicle at Kip Perry's residence. (*Id*. ¶8.) Further, within days of the affidavit, DEA-1 saw Bruce and Kip smoking marijuana at Kip's residence (*Id*. ¶11) and, within 3 weeks of the affidavit, DEA-1 saw Bruce Perry present at Kip Perry's residence when a customer came and purchased drugs from Kip. (*Id*. ¶ 9.) The affiant states that from his training he knows that drug sellers do not want others to witness their transactions "unless those individuals are trusted members of the conspiracy." (*Id*.) The affiant then states that these facts "indicate[] that Bruce Perry is a member of the Kip Perry organization." (*Id*.)

Agent Grodsinsky also avers that his investigation has linked Bruce Perry to the Trier Street address (*Id*. ¶12), that surveillance officers have frequently followed Bruce Perry to that address (*Id*.), and that "people who participate in a drug conspiracy by providing a safe place for the drug distributors to store drugs until needed . . . often keep records of the drugs[.]. . ." (*Id*. ¶10.)

The search warrant return indicates that the warrant was executed early the next morning and yielded residence papers for Bruce Perry, photos, 11 weapons, a loaded 7.65mm magazine, boxes of ammunition, and over $36,000.00. (See Return and Detail of Seized Property, attached to this Report and Recommendation.)

-3-

Defendant Bruce Perry argues in this motion that the search warrant affidavit lacked sufficient information to provide probable cause to conduct the search and that the facts recited in support are stale. During the hearing, counsel for Defendant broadly implied that the sworn statements made by Agent Grodsinsky were in reckless disregard for the truth. The Government asserts that Defendant lacks standing to seek suppression; that the facts in the affidavit were sufficient to support the finding of probable cause to search; that the affidavit contains no reckless disregard for the truth; and that its supporting facts are not stale.

## II.

This Court reviews the a report and report and recommendation of a magistrate judge *de novo* in light of the parties' specific objections. *See* 28 U.S.C. § 626.

## A.

During the hearing, the government again reiterated its position that the defendant lacked standing to challenge the evidence seized because he had no ownership interest in the property – the guns and the money – and thus no privacy rights protected by the Fourth Amendment.

It is a well established principal that as a threshold matter to invoking the exclusionary rule, a criminal defendant "bears the burden of showing that his *own* Fourth Amendment rights were violated." *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (citation omitted) (emphasis added). This burden of "standing" generally requires the defendant to demonstrate a legitimate expectation of privacy in the place search and the items sized. *United States v. Pollard*, 215 F.3d 643 (6th Cir. 2000). The Sixth Circuit has explained that a legitimate expectation of privacy means an actual, subjective expectation privacy that society recognizes as legitimate. *Ibid.*

The government's argument presents little pause for concern. Seized from the defendant's home were residence papers for the defendant, photos, eleven weapons, a loaded 7.65mm magazine, boxes of ammunition, and approximately $36,000. As the magistrate judge noted, "[d]uring the

-4-

hearing, counsel for Defendant unequivocally represented that Defendant acknowledges ownership of all of the weapons and $20,000 of the cash seized." R&R at 7.  Although the defendant's story as to the weapons and money has since changed, the same result obtains.

At the hearing on the defendant's objections, the defendant explained that three of the weapons were his, and he was acting as a bailee with respect to the $20,000 at the behest of his brother, Kip Perry, who apparently did want disclosure of that sum of money during the pendency of his divorce proceedings.  The balance of the cash found, approximately $16,000, the parties conceded belonged to the defendant.  As a result, the government stipulated on the record that the defendant had standing to challenge the seizure of the $16,000 and the three weapons, assuming the serial numbers could be appropriately matched to verify the defendant's allegations as to which of the firearms were his as distinct from his wife's.  Further, the government has alleged no grounds for the introduction of the evidence against the several co-defendants named in the indictment.  At the same time, the government explained that it merely sought to preserve its argument in the event the defendant changed his story at trial.  The Court therefore believes that the defendant has standing to challenge the items seized to which the parties stipulated.

B.

1.

The magistrate judge first addressed whether the search warrant affidavit contained sufficient information that supported the confidential informant "DEA-1"'s reliability such that a reviewing magistrate could make an informed probable cause determination.  Although the affiant conceded during the hearing conducted by the magistrate judge that the affidavit did not contain the DEA-1's prior convictions, the magistrate concluded that DEA-1 "independently corroborated his/her

trustworthiness by his/her own actions." R&R at 8; *see also United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999) (noting that corroboration may be provided "by various means, including direct surveillance or circumstantial evidence, or [being] 'vouchsafed' by the affiant's statements about the past performance").

Specifically, the affiant recounted that DEA-1 "participated in attempted drug transactions, as well as at least one 'controlled buy' which were heard by the Agent, either by way of a 'wire' or the wiretap." R&R at 8. The confidential informant noted several occasions when that individual was present during the Perrys' participation in illegal activities. Further, the magistrate judge reasoned, "[t]he affidavit corroborates these assertions as surveillance officers on more than one occasion placed Bruce and Kip Perry together [and] . . . . the presence of the wire tap allows Agent Grodsinsky, and to some degree the issuing Magistrate Judge, to independently assess and corroborate DEA-1's assertions." *Ibid.* Thus, the magistrate judge concluded that DEA-1's reliability was firmly established within the four corners of the search warrant affidavit.

The magistrate judge next analyzed whether probable cause supported the issuance of the warrant in this case as analytically distinct from the concept of staleness. He suggested that the search warrant affidavit did support a finding of probable cause:

> During the hearing, defense counsel, both through questioning and in oral argument, set forth a series of reasons why, in his view, the search warrant affidavit is lacking in probable cause. Under questioning by defense counsel, Agent Grodsinsky conceded that he did not mention that the Perrys engaged in a snow plowing business, stating that from his observations, and that of other officers, they rarely undertook that activity. The agent also conceded that he knew that Bruce and Kip got together on almost daily basis to watch "The Price is Right" on television, but did not mention it in the affidavit. The agent also agreed that he could not verify that drugs were continuously stored at Bruce's residence or that any of the "70" referred to in the October 16, 2005, conversation still existed. In fact, the agent agreed that it was likely none of the "70" would have been in the residence at the time of the search.

The Government asserts that it is improper to examine each distinct part of the affidavit separately and then conclude that each part does not establish probable cause. Rather, the Government states that under the totality of the circumstances approach, the proper method is to"weigh not individual layers but the 'laminated total.'" *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir. 1984) (en banc) (quoting *Smith v. United States*, 358 F.2d 833, 837 (D.C. Cir. 1966)).

Under these standards, I suggest that the search warrant establishes probable cause. I suggest that a reading of the search warrant in its entirety indicates "a fair probability" that Bruce and Kip Perry engage in a continuing drug trafficking enterprise, that they use their residences in furtherance of that effort, and that Bruce uses his residence to store drugs. As to Agent Grodsinsky's omissions relating to Kip and Bruce maintaining a snow plowing business and watching "The Price is Right," it is well established in this circuit that "the probable cause requirement does not require that every contrary hypothesis be excluded." *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir.1988); *United States v. Wagers*, 452 F.3d 534, 542 (6th Cir. 2006).

R&R at 10-11.

It does not appear that the defendant takes issue in his objections with the magistrate judge's analysis with respect to the confidential informant's reliability.  Nor does the defendant object to the magistrate judge's conclusion that there was probable cause to the extent that the concept *can* be analytically separated from his challenge to the timeliness and accuracy of the information included in the affidavit.  Rather, in his own words, "[t]he Defendant objects to the magistrate judge's finding that the information relied on in the affidavit for search warrant was not stale." Def. Obj. at 4.

2.

The Fourth Amendment to the Constitution declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Thus, in order to search and seize, the Fourth Amendment requires government officials to

-7-

have probable cause.  Probable cause generally is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (citing *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)).

To justify the issuance of a warrant by an impartial magistrate, "an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotations and citation omitted).  As the Sixth Circuit has explained, "probable cause is based on the totality of the circumstances; it is a practical, non-technical conception that deals with the factual and practical considerations of everyday life." *Abboud*, 438 F.3d at 571. When determining whether an affidavit supporting a search warrant is sufficient, the Court is limited to that document's four corners.  *Ibid.*  The Court also is obliged to "give great deference to a magistrate's determination of probable cause." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

The probable cause requirement for a search warrant focuses on "facts relating to a presently existing condition." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting W. LaFave, Search and Seizure § 3.7 at 338 (3d ed. 1996)).  "[T]he critical question is whether the information contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Abboud*, 438 F.3d at 572 (citations omitted).

The staleness inquiry, the Sixth Circuit has explained, involves a fact specific, case-by-case analysis. *Spikes*, 158 F.3d at 923.  As a result, "the length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Ibid.*  Stated

otherwise, "even if a substantial amount of time had elapsed between a defendant's last reported criminal activity and the issuance of the warrant, the warrant may not be stale." *Abboud*, 438 F.3d at 557 (citations omitted).

The Sixth Circuit has established four factors to aid in determining whether information contained in an affidavit has become stale, thereby rendering a finding of probable cause by a magistrate constitutionally violative: "(1) the character of the crime (chance encounter in the night or regenerating conspiracy?); (2) the criminal (nomadic or entrenched?); (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?); (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *Ibid* (internal citation and quotation marks omitted).

In this case, there can be no doubt that probable cause would have been established if the "70 at Bruce's house" referred to in the search warrant affidavit had been recorded within a few days of the execution of the search warrant. The question is whether the lapse of five months between the gathering of that information and the application for the warrant, defeats probable cause in light of all the other information contained in the search warrant affidavit.

The magistrate judge, as noted, found that the lapse of five months would not defeat probable cause in light of the totality of the circumstances:

> Defendant asserts that another basis for suppression is that the information in the search warrant affidavit was stale, noting that the conversation relating to the "70 at Bruce's house" took place approximately five months prior to the search.
> . . .
> In this Circuit, it has been held: (1) that the purpose of the staleness test is not to create an arbitrary time limit; (2) that the existence of probable cause is a function of the inherent nature of the crime; (3) that time is less significant with regard to continuing conduct; and (4) that indicia of criminal activity may remain for some period of time after the defendant's last reported criminal activity. United States v. Canan, 48 F.3d 954, 959 (6th Cir. 1995). The court has further instructed that,

-9-

> [i]nstead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Andresen v. State*, 24 Md. App. 128, 331 A.2d 78, 106 (1975). As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the *premises. See United* States *v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (holding information not stale even though an informant said that two years ago he had remodeled defendant's premises to allow him to grow marijuana on second floor, with the court emphasizing that the information showed "an ongoing criminal business of a necessarily long-term nature"); see also *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (stating the general principle that when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant").

*United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). The *Spikes* court found that the trial court properly denied a motion to suppress even though some of the events included in the affidavit occurred four years earlier. *Id*. at 923. In *United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986), the court found that probable cause for a search warrant existed despite the passage of four months since the last documented drug sale. Evidence of ongoing criminal activity will generally defeat a claim of staleness. *See Canan*, 48 F.3d at 958 (though conduct described in affidavit was four years old, evidence of ongoing nature defeated claim of staleness). Moreover, where the criminal activity occurred in a "secure operational base," the passage of time becomes less significant. *Spikes*, 158 F.3d at 924 (where house had become "primary source of crack cocaine in town and . . . was regularly being manufactured on the premises," vintage of information less important). *See also United States v. Yates*, 132 F. Supp. 2d 559, 565 (E. D. Mich. 2001) ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation.").

Under these standards, I suggest that the information supporting this search warrant was not stale. These cases make clear that the character of the primary crime charged, illegal possession and distribution of drugs, is by its nature a "continuing" crime. The affidavit at issue bears this out. As mentioned, approximately five months prior to the warrant's execution, Kip Perry said "I still got 70 at Bruce's house."

-10-

(Aff. ¶ 6.) This, I suggest, gives rise to the legitimate inference that drugs are sold from Kip's residence but stored in Bruce's residence. Four months prior to execution, surveillance officers observed activity at Kip's residence consistent with drug trafficking. (Aff. ¶ 7). During the 45 days prior to the warrant's execution, Bruce's vehicle was regularly observed at Kip's residence "almost on a daily basis, including when activities consistent with drug trafficking have occurred." (Aff. ¶ 8). Finally, less than three weeks prior to the warrant's execution, DEA-1 observed a drug transaction take place at Kip's residence. (Aff. ¶ 9).This information, I suggest, gives rise to a legitimate inference that the drug trafficking enterprise is continuing without change. In other words, drugs are continuing to be sold from Kip's residence and stored at Bruce's residence. Moreover, as pointed out in *Yates*, the use by Kip and Bruce of their homes gives rise to an inference of "permanence."

As evidence of staleness, Defendant points to the statement in paragraph 11 of the affidavit that DEA-1 most recently saw Bruce and Kip smoking marijuana together "during the week of March 12, 2005." When confronted with this statement during the hearing, Agent Grodsinsky testified that the year 2005 was a typographical error and that the correct date should have been March 12, 2006. I note first that the agent's testimony is not inconsistent with the structure of the affidavit, which proceeds in a generally chronological order. More importantly, however, Defendant's reliance on *U.S. v. Hython*, 443 F. 3d 480 (6th Cir. 2006), does not compel a contrary result for at least two reasons. First, I suggest the case is clearly distinguishable. There, the court found the recitations of fact regarding drug transactions stale for the reason that not one of the facts supporting the search warrant in that case were linked to any date. *Id.* at 486. To the contrary, in this case, a specific date or a reasonable range of time attends virtually every factual recitation made in Agent Grodsinsky's affidavit. Secondly, and with specific reference to paragraph 11, *Hython* cites both *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005), and *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), for the proposition that application of the exclusionary rule is not warranted where the failure to is nothing more than "a scrivener's error." *Id.* at 535. "Punishing [the affiant officer] for such a ministerial oversight would have no foreseeable deterrent effect on future police misconduct." *Id.* As a result, I therefore suggest that staleness does not invalidate this search warrant.

R&R at 11-13.

The narrow question for review, then, is whether the search warrant affidavit contained sufficient evidence that the defendant was part of an on-going criminal enterprise and that his house would serve one of the bases for such operation despite the fact that the last known storage of drugs at the residence was some five months prior.

-11-

The defendant believes that the magistrate judge does not accord *Hython* the weight it deserves. Specifically, he asserts:

35. The magistrate judge first attempts to distinguish *Hython* because that case did not involve specifically named date for drug transactions, whereas the search warrant here does.

36. The distinction is tangential at best when one considers that the affidavit in *Hython* describes events which are, although not specifically enumerated, closer in time to the filing of the affidavit than the five month lapse we are dealing with here.

37. The thrust of the *Hython* opinion is that drug sales and related offenses are not, in and of themselves, inherently on going in nature and information about the same can go state. It should be noted that *Hython* is a more recent decision than those cases cited by the magistrate arguing against staleness.

38. The magistrate's second reason for disregarding *Hython* seems to misconstrue his position. Magistrate notes that the exclusionary rule should not apply to punish a scrivener's error. The Defendant does not rely on a scrivener's error for his argument, but rather the excessive delay between the October conversation and the March affidavit.

Def's Obj. at 5.

*Hython*, in this Court's judgment, is distinguishable. In that case, a municipal judge issued a warrant authorizing the search of "all persons present at the time of officer entry" and seizure of the property related to the sale of drugs. The affidavit submitted in support of the application for the warrant read as follows:

Narcotics Officers from the Steubenville Police Department, Toronto Police and Jefferson County Sheriff's Office in a joint investigation conducted a controlled buy of crack cocaine from 241 South Fifth Street in the city of Steubenville.

A reliable confidential informant advised officers that he was able to purchase crack cocaine from a female in Toronto. The female had advised the informant in the past that her source of crack cocaine is subject in the city of Steubenville. Officers provided the informant with one hundred and fifty dollars in marked U.S. currency for a transaction. Officers conducted surveillance and were able to follow the informant to the known drug location in Toronto where the informant met with the

-12-

female suspect. Officers were able to hear conversation via an audio transmitter. During the conversation the female received the currency from the informant and advised that she would travel to Steubenville to obtain the crack cocaine. Officers were then able to follow the female to 241 South Fifth Street in the City of Steubenville. The female entered the residence and exited within two minutes. Officers were then able to follow the female back to Toronto where she met with the informant and provided him with a baggie containing crack cocaine.

Due to the above transaction with the residence, officers believe the[re] to be further crack cocaine within the residence.

*Hython*, 443 F.3d at 482-83.

Later that day, officers executed the warrant with drawn weapons where they found five individuals including the defendant. The defendant was handcuffed and read his *Miranda* warnings. In response to a question from an officer, the defendant apparently indicated that he had contraband and a search of his person revealed crack cocaine and a "large wad of cash" that later turned out to be "pre-recorded buy money." *Id.* at 483.

On appeal, the parties disputed whether the information contained in the affidavit was stale. The court of appeals concluded that it was, reasoning:

The crime at issue in this case-the sale of drugs out of a residence-is not inherently ongoing. Rather, it exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the "drug den" end of the continuum. In *Greene*, a search was upheld despite the fact that the last of 12 controlled buys took place 23 months prior to the issuance of the warrant. *See id.* The number of controlled buys, in combination with ongoing observation of the comings and goings at the residence, established probable cause to believe that the residence continued to be an operational base for a drug ring. *See id.* In *Spikes*, although some evidence in the affidavit was over four years old, 158 F.3d at 923, very recent information, coupled with surveillance over a span of years, established probable cause that the home to be searched was the primary source of crack cocaine in the town and that crack was regularly being manufactured on the premises. *See id.*

-13-

Unlike those detailed above, the affidavit in this case did not establish that 241 South Fifth Street was the secure operational base for an ongoing drug enterprise. Rather, the investigation consisted solely of one modified controlled buy, in which a confidential informant gave pre-recorded buy money to an unidentified female, who was followed to the address in question, observed entering and leaving, and who later delivered a baggie of crack cocaine to the confidential informant. The only other possible suggestion that the house in question was an operational base for a continuing enterprise is that the unidentified female "advised the informant in the past that her source of crack cocaine is subject in the city of Steubenville." Although this ambiguous language suggests that she had purchased crack more than once from someone in Steubenville, or perhaps even from someone residing at the South Fifth Street address, it does not eliminate the possibility that the criminal activity in question is very close to the opposite end of the continuum, where an individual occasionally sells drugs to acquaintances out of his or her personal holdings. The fact that the confidential informant himself did not purchase the crack, but rather used the female as an intermediary, not only calls into question the degree of control involved in this "controlled buy," but it also militates against the conclusion that the premises at 241 South Fifth Street constituted an established and notorious drug den. *The single transaction is not supported by any further police investigation-the affidavit includes no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no second controlled buy, no further surveillance whatsoever.*

More importantly, the affidavit offers no clue as to when this single controlled buy took place. Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence. *See, e.g., United States v. Harris*, 403 U.S. 573, 578 (1971) (affidavit not stale or lacking in specificity when informant reported purchasing illegal items from defendant "within the past two weeks" as part of a regular pattern over a two year period); *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir.1993) (although affidavit provided no date for on-site surveillance, probable cause existed because affidavit indicated a 21-month time frame for illegal activity, and evidence was of durable nature). *Even had the affidavit stated that from time out of mind, 241 South Fifth Street had been a notorious drug den, some recent information would be necessary to eliminate the possibility that a transfer in ownership or a cessation of illegal activity had not taken place*. In this instance, without a date or even a reference to "recent activity," etc., there is absolutely no way to begin measuring the continued existence of probable cause. *See United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir. 1973) (although affidavit did not allege date of informant's information, affidavit in its entirety "clearly rebuts any information or lack of specificity"). This deficiency alone is sufficient to render the warrant invalid, without considering any of the affidavit's other weaknesses. Thus, we agree with the district court's finding that the warrant was invalid on staleness grounds.

-14-

*Id.* at 485-87 (emphasis added).

Thus, although *Hython* establishes that drug sales out of a residence is not in and of itself inherently an on-going activity, it articulates a fact-based continuum for analyzing and establishing probable cause in cases where regular drug sales are alleged. In other words, other observations in the affidavit may lend credence to a finding of probable cause where, although the last observed drug activity at the residence was months prior, the defendant was connected to a on-going drug operation and his residence likely was used as a part of the operation.

In this case, there is sufficient information to establish that the defendant's residence was part of a larger scale operation. First, unlike *Hython*, as the magistrate judge notes, the search warrant affidavit contains dates establishing that the conversation about the "70" at the defendant's house occurred on October 16, 2005. There is also another reference contained in the affidavit connecting the defendant's residence to drug storage, albeit inferentially. In May 2005, the informant made a controlled purchase of one pound of marijuana from Kip Perry. Aff. at ¶ 5. The purchase was arranged over the telephone and recorded. Apparently, Kip Perry did not have the marijuana at his home, but stated could get it from his "guy" that lived five minutes away, the approximate time it takes to travel between the defendant's home and Kip Perry's residence. In fact, the affiant avers "I know that the distance between 225 Trier (the defendant's home) and 2303 (Kip Perry's home) could be traveled in approximately five minutes." *Ibid.* The purchase was effectuated later that day for approximately $850, and the marijuana was promptly turned over to law enforcement officers. *Ibid.*

Second, the affidavit contains extensive references to on-going surveillance. For example, the document avers that the confidential informant had obtained drugs from the defendants brother

-15-

over "a period of several years" and "that Kip had two brothers, Bruce Perry (the defendant) and Phil Perry, that worked with Kip Perry in connection with drug trafficking." Aff. at ¶ 4. Further, the affiant noted that based on information obtained from the informant, the defendant "stored and distributed marijuana for Kip Perry." *Ibid.*

During the week of October 16, 2005, as noted, specific reference was made to the defendant's residence as a place of storage. As noted earlier, during recorded conversations between the informant and Kip Perry, Kip Perry allegedly stated "they got some really good green" but claimed he did not want to purchase any because he "still [had] 70 at Bruce's house." Aff. at ¶ 6.

The surveillance continued. On November 7, 2005, DEA-1 "observed vehicles used by Kip and Bruce Perry" parked at Kip Perry's residence. Aff. at ¶ 7. At approximately 3:30 p.m., an agent "saw a van arrive and park on the road in front of the residence." *Ibid.* A person exited the van and went to the back door of Kip Perry's house and returned six minutes later. *Ibid.* According to the affidavit, the affiant knew "based our training and experience . . . such conduct is consistent with drug trafficking, particularly since the visitor went to the back door, stayed very briefly, and did so normal business hours on a weekday." *Ibid.*

Between February and March 2006, the affiant stated that the defendant's vehicle was observed at "Kip Perry's residence on almost a daily basis, including when activities consistent with drug trafficking have occurred." Aff. at ¶ 8. In addition, "[o]n ten occasions during that one month period when surveillance officers have observed people making brief stops at Kip Perry's house during the day time, which I submit is indicative of drug trafficking, Bruce Perry's vehicle was also seen at the residence." *Ibid.*

The first week of March 2006 saw further evidence of the defendant's involvement in drug

-16-

trafficking.  The defendant was present when a customer "made a drug purchase from Kip Perry." Aff. at ¶ 9. The affiant noted that based on his training "drug traffickers do not want others to witness their purchases and sales of controlled substances, unless the those individuals are trusted members of the conspiracy.  I submit that Bruce Perry's presence when Kip Perry is apparently conducting drug transactions indicates that Bruce Perry is a member of the Kip Perry organization." *Ibid.* In addition, the affidavit proceeds to recite the basis for the belief that drugs would be continually stored in what appeared to law enforcement officers to be an on-going controlled substances operation: "Based on my training and experience, I know that people who participate in a drug conspiracy by providing a safe place for the drug distributors to store drugs until needed for distribution." Aff. at ¶ 10.

Continued investigation with the use of the confidential informant linked the defendant to marijuana during the week of March 12, 2006.  Although the affidavit actually avers 2005 instead of 2006, the parties' conceded that this notation was a scrivener's error.  The magistrate judge also aptly noted that the search warrant affidavit proceeds in chronological fashion, and the context of the affidavit as a whole makes clear that the mistaken year was merely a typographical error apparent even on a cursory reading of that document.  At any rate, as the defendant points out, "Defendant does not rely on a scrivener's error for his argument, but rather the excessive delay between the October conversation and the March affidavit." Def.'s Obj. at 5.

Thus, some fifteen days before the search was executed, "DEA-1 has frequently seen Bruce and Kip Perry smoking marijuana together at Kip Perry's residence . . . most recently during the week of March 12,[2006]." Aff at ¶ 11.  Finally, the affiant noted another basis for believing that the defendant likely stored marijuana at his residence:

-17-

> Based on my training and experience, I know people who habitually use marijuana keep a supply of controlled substances and drug paraphenalia in their residences.  I also know that people who occupy a place also have records, such as mail, leases, and deeds, which reflect their use of the premises.

*Ibid.*

Ultimately, if the test for probable cause and staleness were based on examination of each paragraph of a search warrant affidavit in isolation, then the defendant's argument would have greater force.  That is, if the only information contained in that document were the reference to the "70" Kip Perry had stored at "Bruce's house," aff. at ¶ 6, the concerns articulated in *Hython* would be present.  However, it is well established, as the magistrate judge emphasizes, that a federal court reviewing a probable cause determination looks to "the weight [of the entire document] not individual layers, but the 'laminated total'" *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir. 1984) (en banc) (citation omitted).

Present on the face of the affidavit is a well-documented investigation into drug trafficking involving Kip and Bruce Perry.  The affidavit notes two references to the defendant's residence, one involving a substantial sum of marijuana recorded five months before the warrant was executed, and another, somewhat more inferentially, in May of 2005 as the "guy" that lived five minutes from Kip Perry's house. Aff. at ¶ 5.

More importantly, however, is the fact that the defendant himself, unlike the one time controlled buy without reference to time and lack of other corroborating surveillance connecting the defendant to an on-going drug operation in *Hython*, is linked at each step of continuing investigation to what can only be described as an on-going coordinated activity involving controlled substances. Initial investigation revealed that the confidential informant had specific knowledge that the defendant "stored and distributed marijuana for Kip Perry." A recorded conversation between

-18-

the confidential informant and Kip Perry as to suppliers and storage brought up discussion of the defendant. Continued surveillance revealed that the defendant's vehicle was at Kip Perry's residence when activities suggesting drug transactions occurred.

In February and March of 2006, further observations by law enforcement officers placed the defendant's vehicle at Kip Perry's residence "on almost a daily basis." Aff. at ¶ 8. Although the defendant notes that he and his brother congregated daily to watch the *Price is Right* and further operated a snow plowing business together – ostensibly innocent reasons for the defendant's presence at Kip Perry's home – the affidavit goes on to note "ten occasions during that one month period . . . surveillance operators . . . observed people making brief stops at Kip Perry's house during the daytime, which . . . is indicative of drug trafficking." Aff. at ¶ 8. Investigation also revealed that during the first week of March 2006, the same month the warrant issued, the confidential informant and the defendant were present when a customer arrived to make a drug purchase. Aff. at ¶ 9.

The significance of that sale was, as the affidavit explains, "drug traffickers do not want others to witnesses their purchases and sales of controlled substances, unless those individuals are trusted members of conspiracy." The logical conclusion then follows in the affidavit: "Bruce Perry is a member of the Kip Perry organization." Finally, weeks before the warrant issued, the defendant was observed smoking marijuana with his brother.

The Court therefore believes that although the search warrant issued five months following the last recorded reference of drugs being stored at the defendant's residence, the search warrant affidavit carefully and reliably documents an on-going drug operation, an integral part of which was the defendant and the use of his residence. Based on the totality of the circumstances, there was sufficient information in the affidavit upon which the issuing magistrate reasonably could conclude

-19-

that it was probable that contraband would be found at the defendant's residence.

## C.

The defendant next objects to the magistrate judge's determination that a *Franks* hearing and suppression under that doctrine was inappropriate. He contends that the affiant displayed a intentional or reckless disregard for the truth when he omitted information that the defendant and his brother operate a snow plowing business together and meet daily to watch the *Price is Right*.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a hearing must be held if the defendant shows false statements were intentionally included in an affidavit for a warrant:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56. Under *Franks,* incorrect statements due to mere negligence or innocent mistake are insufficient to void a warrant. *Franks,* 438 U.S. at 171; *see also United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993); *United States v. Rodriguez-Suazo*, 346 F.3d 637, 645-46 (6th Cir. 2003). Such information need not be removed from the affidavit.

A hearing, however, is not justified when the defendant makes a conclusory attack against a search warrant or desires simply to cross examine government witnesses. *Franks*, 438 U.S. at 172. The defendant must make "allegations of deliberate falsehood or reckless disregard of the truth, and those allegations must be accompanied by an offer of proof." *Ibid.* Further, the defendant must point

-20-

to specific portions of the affidavit he claims are false and provide a statement of supporting reasons. *Ibid.* "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or in their absence satisfactorily explained." *Ibid.* Finally, the Sixth Circuit has held that there must be evidence that the challenged statement originated with the affiant, not with the informant. *See United States v. Giacalone*, 853 F.2d 470 (6th Cir. 1988).

The defendant's arguments under *Franks* are appropriately dismissed. The magistrate judge correctly reasoned that,

> In this case, Defendant primarily cites the omissions discussed earlier [daily viewing of the *Price is Right* and the operation of a joint snow plowing business] and acknowledged by Agent Grodsinsky during his testimony and the erroneous date contained in paragraph eleven. These assertions, I suggest, fall well below the threshold for justifying a Franks hearing, and, for the reasons discussed at greater length earlier, amount at most to "negligence or innocent mistake. I therefore find no basis for the holding of a *Franks* hearing, and suggest that on this ground, the Court deny Defendant's motion.

R&R at 15. In his objections, the defendant merely repeats the same assertions he made to the magistrate judge, although with less emphasis on the scrivener's error. There is no evidence to which the defendant can point other than the fact that the information was omitted. In fact, he even concedes "[t]he magistrate correctly notes that an affiant is not required to list alternative, innocent theories that may be bolstered by information in an affidavit." Def.'s Obj. at 5.

The Court can find no basis in the record for a *Franks* hearing. At best, the omissions suggest "negligence or an innocent mistake," without any accompanying offer of proof of scienter or recklessness. The defendant, therefore, is not entitled to a *Franks* hearing. The Court concludes that the magistrate judge applied the appropriate analysis and properly suggested that a *Franks* hearing was unnecessary.

D.

The defendant finally takes issue with the magistrate judge's determination that the good-faith exception would apply under the circumstances of the case even if probable cause were lacking.  The defendant bases his claim on the same omissions outlined above and concludes that the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984), cannot save the warrant in this case. He insists that "[a]s the agent in charge of the investigation, [the affiant] should not be allowed to rely in 'good faith' on the warrant he himself obtained with an affidavit displaying a reckless disregard for the truth."

The Sixth Circuit recently reiterated the good faith exception to the warrant requirement. In *United States v. Laughton*, 409 F.3d 744 (6th Cir.  2005), the court of appeals wrote:

> In [*United States v. Leon*, 468 U.S. 897 (1984)] working from the premise that the exclusionary rule is a judicially created (as opposed to constitutionally required) remedy for and deterrent to violations of the Fourth Amendment, the Court reasoned that "where [police conduct] was pursued in complete good faith . . . the deterrence rationale loses much of its force." *Leon*, 468 U.S. at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). Therefore, the Court determined, the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated . . .
>
> The *Leon* decision also identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Laughton*, 409 F.3d at 748.

Because the omissions noted above were not the product of information known to be false or set forth in the affidavit with reckless disregard for the truth, the Court can only conclude that

-22-

even if probable cause were lacking, the good faith exception would apply.  The magistrate judge did not err in his analysis under *Leon*.

III.

After a *de novo* review of the record in this case in light of the parties' submissions, the transcript of the evidentiary hearing conducted by the magistrate judge, and the defendant's specific objections, the Court concludes that the magistrate judge reached the correct result.  The information contained in the search warrant was not stale, there has been no showing of deliberate falsehoods or a reckless disregard for the truth in the lengthy search warrant affidavit such that a hearing under *Franks* is required, and alternatively, the good faith exception applies under the facts as presented in the record in this case.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt # 91] is **ADOPTED**, the defendant's objections thereto [dkt #94] are **OVERRULED**, and the defendant's motion to dismiss [dkt # 64] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 3, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 3, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS